UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MICHAEL MCGLONE,

                Plaintiff,                11 Civ. 3004

   -against-                       OPINION

CONTRACT CALLERS, INC., ET AL.,

                Defendants.

------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiff

        GOLDBERG & DOHAN
        275 Madison Avenue, Suite 705
        New York, NY  10016
        By:  Penn U. Dodson, Esq.


        Attorneys for Defendants

        THE ENTERPRISE LAW GROUP LLC
        8151 Clayton Road, Suite 201
        St. Louis, MO  63117
        By:  Ira L. Blank, Esq.

        REITLER KAILAS & ROSENBLATT, LLC
        885 Third Avenue, 20th Floor
        New York, NY  10022-7604
        By:  Lauren Katz Kluger, Esq.

**Sweet, D.J.**

Plaintiff Michael McGlone ("McGlone" or the "Plaintiff") has moved pursuant to 29 U.S.C. § 216(b) for conditional certification to proceed collectively in this Fair Labor Standards Act ("FSLA") action against Contract Callers, Inc. ("CCI"), Michael McGuire ("McGuire") and William "Tim" Wertz ("Wertz") (collectively, the "Defendants"). Based upon the facts and conclusions set forth below, the motion is granted in part and denied in part.

## Prior Proceedings

The complaint in this action was filed on May 3, 2011 alleging violations of the FLSA of 1938, as amended, 29 U.S.C. § 201 et seq., arising out of failure to pay overtime for work performed before and after the recorded workday and during meal breaks.

The instant motion was heard and marked fully submitted on December 15, 2011.

## The Facts

1

The facts were set forth in affidavits submitted by the parties and are not in dispute except as noted below.

CCI is a corporation headquartered in Augusta, Georgia with 12 operating divisions based upon geographical locations. Among other services provided, certain divisions of CCI provide utility disconnect and reconnect service under contracts with local utility companies.

CCI employs approximately 500 individuals, approximately half of whom are Field Service Representatives ("FSRs"). The company maintains a common roster of these individuals. CCI also furnishes FSRs with a training binder and a "Contract Callers, Inc. Employee Manual" which states, "CCI will pay overtime consistent with applicable federal and state law and regulations" and "hours and work standards are therefore covered in the supplemental section of this manual."

CCI is a decentralized company with each office operating as a standalone division based upon its geographical location. Each operating division has a general manager who reports directly to Wertz, CCI's President. Each general manager is also responsible for the operations of his or her

2

division, including oversight of all payroll functions and the calculation of overtime.  Thus, scheduling and payroll practices differ amongst CCI's various divisions and each division has its own established policies.

McGlone was employed from May 2008 to August 2010 as a FSR in CCI's Queens, New York Division.  According to McGlone, he was required to come into work between 7:00 and 7:30 a.m. in order to perform various preliminary tasks necessary to accomplish his daily job duties.  These tasks included loading his truck with supplies and attendance at mandatory staff meetings.  He was, however, not permitted to sign in until 8 a.m.

Further, because of the demands of the job and the schedules set by CCI, McGlone was unable to take a bona fide meal break, but that time was automatically deducted from his pay regardless.  He would regularly travel from site to site, and when he was finished, he would return his company vehicle to the CCI facility where he would, for example, unload meters he had moved over the course of the day. Regardless of how long it took him to complete these tasks, he was required to log his time to indicate no more than 40 hours of work performed per week.  When McGlone began to report his compensable time

3

accurately on his timesheet, his supervisor told him to record
no more than 40 hours a week, explaining, "We don't pay
overtime."   Thereafter, McGlone began to observe similarities
between himself and his co-workers with comparable job duties.
They also attended the mandatory morning staff meetings and
loaded their vehicles with supplies prior to 8:00 a.m., but did
not log in their time.  He also observed other FSRs returning to
the office after their field work had been completed at times
similar to his own.

Another FSLA action was filed by a former CCI employee
containing similar allegations of overtime and wage violations
in the Eastern District of Missouri. Evans v. Contract Callers,
Inc., No. 4:10-02358-FRB, 2012 WL 234653 (E.D. Mo. Jan. 25,
2012).  In that case, Tab Evans relied on McGlone's affidavit to
support his motion for Conditional Certification and to
establish a common factual and legal nexus between himself and
other CCI employees.  Id. at *5.  On November 16, 2011, the
court denied Evans' motion, finding that he failed to "present
sufficient evidence to establish a colorable basis for his claim
that the putative class members were together the victims of a
single decision, policy or plan of CCI." Evans v. Contract
Callers, Inc., No. 4:10-02358, slip op. at *20 (E.D. Mo. Nov.
16, 2011) (order denying motion for conditional class

certification).   Moreover,   in   denying   Evans'   motion   to
reconsider,  the  court  noted  that  "Mr.  McGlone's  circumstances
were  distinguishable  and  significantly  dissimilar"  from  Evans.
First,  the  court  noted  that  the  "evidence  demonstrated  that
[Evans']  office  paid  its  employees  for  the  one-hour  lunch  break
if  it  was  informed  that  the  affected  employee(s)  worked  through
their  lunch  hour;"  and  second,  unlike  Evans,  "Mr.  McGlone's
attempts  to  record  the  overtime  hours  he  worked  were  met  with
reprimand  by  his  supervisor  and  instruction  not  to  record  such
hours  again."  Evans, 2012 WL 234653, at *5.

**The Applicable Standard**

          The  FLSA  provides  for  "similarly  situated"  employees
to  proceed  collectively  in  pursuit  of  wages  unlawfully  withheld.
29  U.S.C.  §  216(b).   In  such  cases,  the  court  has  the
discretionary  power  to  authorize  judicial  notice  to  potential
class  members  to  inform  them  of  the  action  and  give  them  an
opportunity  to  participate  by  opting  in.  Hoffman-La Roche, Inc.
v. Sperling, 493 U.S. 165, 169-70, 110 S. Ct. 482, 107 L.Ed.2d
480 (1989).

          The  Second  Circuit  has  endorsed  a  two-step  approach  in
determining  whether  a  case  should  be  certified  as  a  collective

5

action under Section 216(b).  Myers v. Hertz Corp., 624 F.3d 537, 554-55 (2d Cir. 2010).  The two-step process requires analysis of whether putative plaintiffs are similarly situated at an early "notice stage" and then again after discovery is largely complete.  Bifulco v. Mortgage Zone, Inc., 262 F.R.D. 209, 212 (E.D.N.Y. 2009).  First, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  Myers, 624 F.3d at 555.  Because minimal evidence is available at this stage, this determination is made using a "relatively lenient evidentiary standard."  Mentor v. Imperial Parking Sys., Inc., 246 F.R.D. 178, 181 (S.D.N.Y. 2007).  The court may authorize notice "after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  Myers, 624 F.3d at 555 (quoting Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997)).

During this first stage, "the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  Cunningham v. Elec. Data Sys. Corp., 754 F. Supp. 2d 638, 644 (S.D.N.Y. 2010) (quoting Lynch v. United Services Auto Ass'n.,

491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Rather, "the court examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." Palman v. CVS Caremark Corp., No. 10-2075, 2011 U.S. Dist. LEXIS 102338, at *2-3 (E.D.N.Y. Sept. 12, 2010). If the court determines that they are, it "conditionally certifies the class and orders notice to potential class members, who are given the opportunity to opt in." Cunningham, 754 F. Supp. 2d. at 644.

At the second stage, after discovery, the district court determines "whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." Myers, 624 F.3d at 555. After conducting this second-stage analysis with a "more stringent factual determination," Lynch, 491 F. Supp. 2d at 368, the court can "decertify the class or divide it into subclasses, if appropriate." Iglesias-Mendoza v. La Belle Farm, Inc., 239 F.R.D. 363, 369 (S.D.N.Y. 2007). "Because courts retain the ability to reevaluate whether the plaintiffs are similarly situated at the second state, the first-stage determination is merely 'preliminary' and subject to reversal, explaining why the plaintiff's first-stage burden is low." Cunningham, 754 F. Supp. 2d at 644.

The Plaintiff's motion seeks conditional certification for purposes of discovery and judicial notice, and implicates the initial stage of the two-step analysis.

In application, courts recognize that the standard for the first step, conditional certification or "notice", is a lenient one. Rubery v. Buth-Na-Bodhaige, Inc., 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008).  However, the certification is not automatic:

> In presenting evidence on the appropriateness of granting collective action status, the plaintiff's burden may be 'very limited,' (citing cases), and require only a 'modest factual showing,' (internal quotation marks and citations omitted), but the burden is not non-existent and the factual showing, even if modest, must still be based on some substance.

Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010).  Thus, "the 'modest factual showing' cannot be satisfied simply by unsupported assertions, but it should remain a low standard of proof because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist." Myers, 624 F.3d at 555.

8

Plaintiff must at least provide evidence that the proposed class members are similarly situated, in that they are the "victims of a common policy or plan that violates the law." Rubery, 569 F. Supp. 2d at 336 (quoting Hoffman, 982 F. Supp. at 261). At this preliminary notice stage, "plaintiffs are only required to demonstrate a factual nexus that supports a finding that potential plaintiffs were subjected to a common discriminatory scheme." Jackson v. New York Telephone Co., 163 F.R.D. 429, 431 (S.D.N.Y. 1995).

In addition, courts in this circuit continue both to grant motions to certify FLSA collective actions and to authorize the sending of notice to potential opt-in plaintiffs. See, e.g., Urresta v. MBJ Cafeteria Corp., et. al., No. 10-8277(RWS) (S.D.N.Y. Oct. 17, 2011); Capsolas v. Pasta Rest., Inc., No. 10-5595(RJH), 2011 WL 1770827, at *6 (S.D.N.Y. May 9, 2011); Rodriguez v. Almighty Cleaning, Inc., 784 F. Supp. 2d 114, 133 (E.D.N.Y. 2011).

**The Proposed Class**

The proposed FLSA class, to whom judicial notice should be issued, consists of individuals who have worked as FSRs for the Defendants in any location during July 1, 2008,

9

three years before the filing of the complaint, to the present. In addition to the strictures of time and job title, in order to be eligible to participate in the lawsuit, each individual would have to affirm on their opt-in form that they believed they had (a) time automatically deducted for "break time" when in fact on at least some occasions s/he was unable to take an uninterrupted break of 30 minutes of longer relieved of all duties and/or (b) performed work-related responsibilities (such as organizing tools, attending staff meetings, meeting with a supervisor, assembling supplies, reviewing routes, completing paperwork, reporting odometer readings, etc.) before clocking in or after punching out.

The class sought to be certified to receive notice and the opportunity to participate in this case consists of a few hundred PSRs located across several states.

Plaintiff contends that, regardless of what particular functions were performed once at the customer's site, all CCI-employed FSRs share common threads.  These include 1) "shorted" hours and shared the experience of having to arrive at the company facility prior to the state of their recorded workday to perform necessary preliminary activities such as loading up their company vehicles, participating in a meeting with their

10

supervisor, and obtaining specifics as to the jobs they would be performing on that day; 2) having time deducted for alleged meal breaks despite more often than not having no opportunity to take a bona fide meal break; 3) performing post-limitary duties at the end of the workday; and 4) being paid for fewer hours than are properly deemed compensable time under the FLSA and affiliated regulations.

## Commonality Has Not Been Established With Respect To The Proposed Class

An affidavit or declaration that is not made on personal knowledge, but instead based on information or belief, does not set out facts that would be admissible in evidence. See Universal Film Exchanges, Inc. v. Walter Reade, Inc., 37 F.R.D. 4, 5-6 (S.D.N.Y. 1965); New York v. St. Francis Hosp., 94 F. Supp. 2d 423, 425 (S.D.N.Y. 2000) (testimony not based on personal knowledge is not admissible evidence); Norita v. Northern Mariana Islands, 331 F.3d 690, 697-98 (9th Cir. 2003) (in FLSA action, plaintiffs' allegations of improper pay practices disregarded because not based on plaintiffs' personal knowledge).

Here, McGlone's claim of company-wide policies is based on allegations made on "information and belief" and not on his personal knowledge. Without more, McGlone has not satisfied his burden to show that a nationwide collective action is appropriate. See Lee v. ABC Carpet & Home, 236 F.R.D. 193, 197 (S.D.N.Y. 2006) (plaintiffs bear the burden to show that requested certification is appropriate).

In a case with similar facts, the court limited notice to only those individuals employed in the same location as the plaintiffs. Camper v. Home Quality Mgmt., Inc., 200 F.R.D. 516, 520-21 (D. Md. 2000). In Camper, the plaintiffs alleged that their employer had a policy of deducting a daily meal break, but that they frequently worked though their breaks and received no compensation for that time. Id. at 517. In support of their motion for nationwide conditional certification, the plaintiffs supplied two declarations from employees who worked only at the same Maryland facility as the other potential plaintiffs. Id. at 520. Those declarants also testified that their supervisors were aware of the unpaid meal breaks and that the policy was intended to be implemented company-wide. Id. The court found that while the plaintiffs had preliminarily established the existence of a company-wide policy of automatic deductions, they did not establish that their supervisors had knowledge of

12

uncompensated work outside of the Maryland facility. Id. at 520-21. Without such a showing, the court held that the plaintiffs had not shown that an unlawful policy or plan was applied outside their own facility. Id. Accordingly, the court denied the motion for nationwide certification, and allowed notice to be sent only to employees at the particular facility where the plaintiffs were employed. Id. at 521.

Other courts have similarly denied nationwide certification where plaintiffs did not meet their burden of showing that all members of the proposed class were "similarly situated." See Villanueva-Bazaldua v. Trugreen Ltd. Partners, 479 F. Supp. 2d 411, 415-16 (D. Del. 2007) (refusing to grant nationwide certification where plaintiff failed to show that his experience at one local office was attributable to the employer nationally, despite his claim that he had relevant conversations with non-local workers); England v. New Century Fin. Corp., 370 F. Supp. 2d 504, 511 (M.D. La. 2005) (denying plaintiffs' request for nationwide certification because they only submitted affidavits relating to one location, which, instead of showing a nationwide illegal policy, at most showed unlawful local policies of a particular manager); Barfield v. New York City Health & Hosps. Corp., No. 05-6319(JSR), 2005 WL 3098730, at *1 (S.D.N.Y. Nov. 18, 2005) (denying plaintiff's motion for

13

certification as a collective action under FLSA, as "plaintiff
presents nothing but limited anecdotal hearsay to suggest that
there is a widespread practice"); Briggs v. U.S., 54 Fed. Cl.
205, 207 (Fed. Cl. 2002) (finding plaintiff's allegation that he
was aware of workers in as many as five states who also failed
to receive overtime pay insufficient to support "a national
notice of action" because it offers no specific support for the
allegation of a violation).


**A Modified Class Is Appropriate**

        While McGlone has not demonstrated personal knowledge
of CCI's policies sufficient to support the existence of a
common policy as to all FSRs across the company's offices
nationwide, he has shown personal knowledge of alleged
violations and directives from supervisors in his specific
district.  He has thereby met his burden of commonality with
respect to FSRs employed in the New York Division.


        This and other courts confronting similar evidence
have reached similar conclusions.  See e.g., Urresta, No. 10-
8277(RWS) (restricting the circulation of class notice to only
employees of one corporate defendant, where plaintiffs "asserted
only vague allegation of FLSA violations" against the other

14

defendants); Laroque v. Domino's Pizza, LLC, 557 F. Supp. 2d
346, 355-56 (E.D.N.Y. 2008) (certifying class for one Domino's
location but denying certification for other locations where
plaintiffs' only evidence that other employees were similarly
situated was one employee's affidavit regarding his experience
at another store); Camper, 200 F.R.D. at 520 (limiting notice to
employees in one location).

**Equitable Tolling Is Appropriate**

        Normally in a FLSA collective action, the statute of
limitations for each plaintiff runs when he or she files written
consent with the court electing to join the lawsuit, not when
the named plaintiff files the complaint.    See 29 U.S.C. §
256(b).    However, courts have discretion to equitably toll the
limitations period in appropriate cases in order "to avoid
inequitable circumstances."    Yahraes v. Restaurant Assocs.
Events Corp., 2011 WL 844963, at *1 (E.D.N.Y. Mar. 8, 2011).
The Honorable Steven M. Gold stated that "the delay caused by
the time required for a court to rule on a motion, such as one
for certification of a collective action in a FLSA case, may be
deemed an 'extraordinary circumstance' justifying application of
the equitable tolling doctrine."    Id. at *2 (collecting cases).
While plaintiffs wishing to pursue their rights cannot sit on

15

them indefinitely, those whose putative class representatives
and their counsel are diligently and timely pursuing the claims
should also not be penalized due to the courts' heavy dockets
and understandable delays in rulings.  Accordingly, the statute
of limitations will be tolled as of the date of the filing of
this motion.

**Conclusion**

        The Plaintiff's motion for conditional certification
of a nationwide class of FSRs employed by CCI is denied and
conditional certification of a class of FSRs employed by CCI in
its New York Division is granted.

        The parties shall submit an order in accordance with
the terms of this opinion.

        So ordered.

**New York, NY**
**April ∠ , 2012**

                                    ROBERT W. SWEET

16