**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MICHAEL MCGLONE, HUBERT BROOKS,
ANTHONY BUFFALINO, CHARLES
BUFFALINO, ROCCO CEPARANO, MIKE
CERALDI, JESSE DIMIRCO, DOMENIC
FANELLI, SAL FISHETTI, JOSEPH FRANGIOSA,
JOSEPH FRISCHE, ANTHONY GANDOLFO,
ROBERT GANDOLFO, JESSE KAY,
THOMAS MURPHY, BRIAN NICHOLAS,
ARIEL PENICHE, ROBERT SCHANTZ,
RAFAEL SOTO, AND SCOTT VAALER,

        Plaintiffs,

    vs.

CONTRACT CALLERS INC., MICHAEL
MAGUIRE, AND WILLIAM "TIM" WERTZ,

        Defendants.

Case No. 1:11-cv-03004-AT

---

## PLAINTIFFS' PRETRIAL MEMORANDUM OF LAW

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ........................................................................................................................... 1

    I.     The Parties ..................................................................................................... 2

    II.    Plaintiffs' Compensation and Defendants' Time-Shaving Practices ..................... 2

SUMMARY OF CLAIMS ................................................................................................. 4

    I.     Plaintiffs Will Be Able to Prove That They Performed
Overtime Work for Which They Were Not Compensated ................................... 4

    II.    Plaintiffs Will Prove That Defendants Knew or Should Have Known That
Plaintiffs Performed Overtime Work for Which They Were Not Compensated ......... 5

    III.   Plaintiffs Will Establish a Measure of Unreported / Unrecorded
Hours Worked as a Matter of Just and Reasonable Inference ............................ 7

    IV.   Plaintiffs Will Prove That Defendants Willfully Violated the FLSA ................... 7

    V.    Plaintiffs Will Prove Coverage Under the FLSA ................................................ 9

    VI.   Plaintiffs Will Prove Each Defendant's Employer Status ................................... 9

UNRESOLVED PRETRIAL ISSUES ............................................................................. 10

    I.     Damages Should be Calculated by the Parties Post-Trial ................................ 11

         A.   FLSA/NYLL Unpaid Overtime Compensation ........................................ 11

         B.   FLSA Liquidated Damages ...................................................................... 12

         C.   Plaintiffs Are Entitled to Reasonable Attorney Fees and Costs ................. 13

    II.    Plaintiffs Are Entitled to NYLL Remedies ....................................................... 13

         A.   NYLL Liquidated Damages ...................................................................... 13

         B.   Interest on Backpay In Addition to Liquidated Damages ........................... 15

         C.   Attorney Fees and Litigation Costs .......................................................... 16

# **TABLE OF AUTHORITIES**

## **Cases**

*Allen v. Bd. of Public Educ. For Bibb County*, 495 F.3d 1306 (11th Cir. 2007) ............................ 5

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) ..................................................... 4, 7

*Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973) ................................... 5

*Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314 (M.D. Ala. 2004)...................... 8

*Dong v. CCW Fashion Inc.*,
    06 Civ. 4973 / 07 Civ. 9741, 2009 U.S. Dist. LEXIS 33194 (S.D.N.Y. Feb. 19, 2009) .. 15

*Gubitosi v. Kapica*, 154 F.3d 30 (2d Cir. 1998) ........................................................................... 1

*Heng Chan v. Sung Yue Tung Corp.*,
    03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883 (S.D.N.Y. May 7, 2007)............................ 15

*Herman v. RSR Sec. Servs.*, 172 F.3d 132 (2d Cir. 1999)......................................................... 8, 14

*Hilton v. Executive Self Storage Assocs., Inc.*,
    No. H-06-2744, 2009 U.S. Dist. LEXIS 51417 (S.D. Tex. June 18, 2009)...................... 5

*Irizarry v. Catsimatidis*, 722 F.3d 99 (2d Cir. 2013) ................................................................. 10

*James v. Finest Guard Servs.*,
    09 CV 122, 2010 U.S. Dist. LEXIS 73223 (E.D.N.Y. June 24, 2010)............................ 16

*Jin v. Pac. Buffet House, Inc.*,
    CV-06-579, 2009 U.S. Dist. LEXIS 74901 (E.D.N.Y. Aug. 24, 2009)............................. 9

*Johnson v. D.M. Rothman Company, Inc.*, 861 F. Supp. 2d 326 (S.D.N.Y. 2012) ..................... 13

*Kopec v. GMG Construction*,
    09-CV-2187, 2010 U.S. Dist. LEXIS 104844 (E.D.N.Y. Sept. 10, 2010) ....................... 15

*Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706 (2d Cir. 2001)........................ 5

*Koylum, Inc. v. Peksen Realty Corp.*, 357 F. Supp. 2d 593 (E.D.N.Y. 2005) ............................ 16

*Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011)..................................... 5, 8, 14

*Liang Huo v. Go Sushi Go 9th Ave.*,
    13 Civ. 6573, 2014 U.S. Dist. LEXIS 51621 (S.D.N.Y. Apr. 10, 2014)........................... 9

*Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2d Cir. 1998)........................................................ 16

*McGlone v. Contract Callers, Inc.*,
    No. 11 Civ. 3004, 2014 U.S. Dist. LEXIS 124612 (S.D.N.Y. Aug. 25, 2014) ........ passim

*McLaughlin v. Seafood, Inc.*, 867 F.2d 875 (5th Cir. 1989) ........................................... 9

*McLean v. Garage Mgmt. Corp.*,
    No. 10 Civ. 3950, 2012 U.S. Dist. LEXIS 55425 (S.D.N.Y. Apr. 19, 2012) .................. 14

*Panix Prod., Ltd v. Lewis*,
    No. 01 Civ. 2709, 2003 U.S. Dist. LEXIS 11952 (S.D.N.Y. July 15, 2003)................... 16

*Prince v. MND Hospitality, Inc.*,
    No. H-08-2617, 2009 U.S. Dist. LEXIS 61637 (S.D. Tex. July 20, 2009) ...................... 5

*Ratesi v. Sun State Trees & Property Maintenance, Inc.*,
    No. 6:05-cv-1825, 2007 U.S. Dist. LEXIS 23870 (M.D. Fla. Mar. 30, 2007) ................. 8

*Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253 (2d Cir. 1999)..................................... 14, 15

*Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313 (S.D. Fla. 2001)................................... 7

*Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068 (N.D. Ill. 2005)................. 5

*Thiebes v. Wal-Mart Stores, Inc.*,
    No. Civ. 98-802-KI, 2004 U.S. Dist. LEXIS 15263 at *14 (D. Or. July 26, 2004)........... 6

*Thomas v. iStar Financial, Inc.*, 652 F.3d 141 (2d Cir. 2011)...................................... 16

*Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008)........................... 13

*Vasquez v. Ranieri Cheese Corp.*,
    No. 07-cv-464, 2010 U.S. Dist. LEXIS 29431 (E.D.N.Y. Mar. 26, 2010)........................ 9

*Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042 (C.D. Cal. 2006)................................ 5

*Young v. Cooper Cameron Corp.*, 586 F. 3d 201 (2d Cir. 2009) ................................. 8

## **Statutes**

29 U.S.C. § 201 .................................................................................................... 1

29 U.S.C. § 203 .................................................................................................... 9

29 U.S.C. § 207 .................................................................................................... 11

29 U.S.C. § 216 .................................................................................................... 13

29 U.S.C. § 255.................................................................................................... 7

29 U.S.C. § 260.................................................................................................... 13

C.P.L.R. § 5001.............................................................................................. 15, 16

C.P.L.R. § 5004.................................................................................................. 16

N.Y. Lab. Law § 198 ............................................................................ 13, 14, 15, 16

N.Y. Lab. Law § 663............................................................................................ 13

**Regulations and Other Authorities**

29 C.F.R. § 778.107............................................................................................ 12

29 C.F.R. § 778.111............................................................................................ 12

29 C.F.R. § 785.13.............................................................................................. 6

29 C.F.R. § 785.19.............................................................................................. 4

## PRELIMINARY STATEMENT

This case is about Defendants' failure to pay Plaintiffs all overtime compensation due under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and New York Labor Law by "shorting" their time in several ways.

The Plaintiffs in this collective action worked as field plumbers for Defendant Contract Callers Inc. ("CCI") and its principals, Michael Maguire and William "Tim" Wertz.  Defendants failed to pay overtime as a result of CCI supervisors intentionally directing the Plaintiffs to falsify their work time recorded, and discouraging accurate reporting of hours by threatening Plaintiffs if they recorded all hours worked.

Plaintiffs will be presenting their case through the testimony of many of the Plaintiffs, testimony of Defendants and/or their agents, and Defendants' records.  At trial, Plaintiffs will establish (1) that Plaintiffs were not paid for all hours worked, including overtime hours; (2) that Defendants knew or should have known that Plaintiffs performed work for CCI at times other than during those logged; (3) information necessary to determine the proper measure of unreported/unrecorded hours worked "as a matter of just and reasonable inference"; (4) that Defendants' failure to pay overtime was willful; (5) the fact of FLSA coverage; and (6) "employer" status of all three Defendants under the FLSA and NYLL.  These claims are summarized below.

## FACTS

The factual background below is drawn from Plaintiffs' December 15, 2013 Motion for Summary Judgment and accompanying Rule 56.1 Statement, which was not opposed by Defendants.  This Court determined those statements were admitted as a matter of law.  *McGlone v. Contract Callers, Inc.*, No. 11 Civ. 3004, 2014 U.S. Dist. LEXIS 124612 at *12 - *13 (S.D.N.Y. Aug. 25, 2014) (citing *Gubitosi v. Kapica*, 154 F.3d 30, 31 n.1 (2d Cir. 1998)).

1

I.      **THE PARTIES**

The twenty Plaintiffs in this case worked as plumbers/field technicians for Contract

Callers, Inc. ("CCI") during CCI's limited duration contract (approximately February, 2009

through December, 2011) with the New York City Department of Environmental Protection

("DEP") installing automatic meter reading ("AMR") devices in Queens.  The AMR units – also

known as AMI and MTU – are devices that transmit water meter readings from the homes in

which they are located back to the DEP so that a meter reader does not have to read them

manually.

For the AMR project, CCI, whose headquarters is located in Augusta, Georgia, set up a

base of operations in Queens from which all of the Plaintiffs worked.  The general manager

throughout the AMR project was Angelo Solomine.  Charlie (Charles) Loguidici was the Field

Supervisor. Both Loguidici and Solomine supervised the Plaintiffs day-to-day.  Above Solomine

and Loguidici in the hierarchy were various off-site members of CCI upper management

including Defendants William "Tim" Wertz and Michael Maguire.

There were two main jobs that the Plaintiffs performed:  (i) installing AMR devices on

existing meters, and (ii) performing "combo" jobs, which involved both replacing the water

meter and installing the AMR device.  Each day the techs were given a route or schedule of

locations at which to perform their work.  They were given these jobs on sheets of paper and also

in handheld electronic devices called CN3s.

II.     **PLAINTIFFS' COMPENSATION AND**
        **DEFENDANTS' TIME-SHAVING PRACTICES**

For purposes here, it is undisputed that Defendants paid Plaintiffs for all of the hours –

including overtime hours – that were recorded on the weekly timesheets.  At issue is the amount

of hours that Plaintiffs actually worked that were unreported/unrecorded, of which Defendants knew or should have known.

The primary contention in this case is that Plaintiffs were "shorted" on their hours worked in various ways – *i.e.*, that they worked "off the clock." With some exceptions, Defendants' records show the Plaintiffs as having worked from *exactly* 8:00am to *exactly* 4:30pm with *exactly* a half hour for lunch each day for *exactly* 40 hours of work each week the vast majority of the time. Plaintiffs contend that they were forced by their supervisors to log these times even though they were false and complained about the time shorting practices.

Some of the workers will testify that when they tried to log their time accurately they were yelled at and told not to do so; others will testify that there were instances of logged times being altered. This Court has already determined as a matter of law that Defendants' time records are inaccurate. *McGlone v. Contract Callers, Inc*., No. 11 Civ. 3004, 2014 U.S. Dist. LEXIS 124612 at *16 - *17 (S.D.N.Y. Aug. 25, 2014).

There are four main categories of time shorting contentions at issue:

1. *Preliminary work*. The Plaintiffs had to arrive at around 7:00 a.m. in order to receive their assignments, paperwork, and CN3 handheld devices; to load up their vehicles with AMRs, meters, and other supplies they expected to need over the course of the day; to have meetings called by their supervisors; and to drive to the location of their first job. Yet they were directed to sign in at 8:00 a.m., even though they were expected to be on site in the field for their first job at 8:00 a.m., the CCI facility opened by or before 7:00 a.m., and CCI supervisor Solomine admitted that some plumbers arrived before 8:00 a.m., before 7:30 a.m., and even sometimes before 7:00 a.m. Any time the Plaintiffs worked performing "preliminary activities" before 8:00 a.m. should have been logged properly, and should have been paid.

2. *Postliminary work*. The plumbers were required to complete a certain amount of jobs each day. This would require them to stay out longer than the time at which they were instructed to log out. This was especially true for those who were less efficient at completing their assigned work.

3. *Meal time*.  A half hour per shift was deducted for alleged meal breaks.  Due to their job requirements and pressures, Plaintiffs were not able to take *bona fide* meal breaks.  29 C.F.R. § 785.19.

4. *Misc*.  Some Plaintiffs will testify that they would be required to work on an off day and not be compensated for it or permitted to log it as time worked.  Also, individuals who used company vehicles were responsible for cleaning them and providing routine maintenance such as oil changes on the weekends.  They were reimbursed for supplies such as oil but were not compensated for the time they had to spend performing these tasks.

## SUMMARY OF CLAIMS

**I.   PLAINTIFFS WILL BE ABLE TO PROVE THAT THEY PERFORMED OVERTIME WORK FOR WHICH THEY WERE NOT COMPENSATED**

In an overtime case under the FLSA, Plaintiffs have the initial burden to prove, by a preponderance of the evidence, that they performed work without compensation.  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946).  Here, Plaintiffs will easily be able to meet this burden through testimony that they did not record all overtime hours worked because Defendants' managers instructed them not to.

For example, Plaintiffs will testify that they were instructed not to record the time that they spent at the warehouse in the morning getting work orders and equipment or the time they spent at the end of the day returning to the warehouse to complete paperwork or turn in equipment.  As Defendants will likely acknowledge, time spent performing these tasks should be compensated.  *See Anderson*, 328 U.S. at 690-91 (noting that the FLSA requires compensation for "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace.").  Plaintiffs will also testify that they were instructed to record a lunch break of 30 minutes and another break of 15 minutes each day even if they did not actually take these breaks, and that in some cases, managers inaccurately completed or altered Plaintiffs' timesheets for them.  Although this testimony alone is enough to meet Plaintiffs'

burden, Plaintiffs' testimony will be corroborated by testimony from Defendants' own agents, as well as documentary evidence such timesheets filled out in handwriting that is not Plaintiffs'.

## II.   PLAINTIFFS WILL PROVE THAT DEFENDANTS KNEW OR SHOULD HAVE KNOWN THAT PLAINTIFFS PERFORMED OVERTIME WORK FOR WHICH THEY WERE NOT COMPENSATED

An employee must be paid for all hours worked "if the employer knows or has reason to believe that the employee is continuing to work and that work was suffered or permitted by the employer." *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 718 (2d Cir. 2001). Courts have routinely found that when a plaintiff complains about uncompensated work, or a supervisor instructed an employee to falsify his timesheets, the employer had actual or constructive knowledge of off-the-clock work. *See Kuebel v. Black & Decker*, *Inc.*, 643 F.3d 352 (2d Cir. 2011); *Allen v. Bd. of Public Educ. For Bibb County*, 495 F.3d 1306 (11th Cir. 2007); *Brennan v. Gen. Motors Acceptance Corp.*, 482 F.2d 825 (5th Cir. 1973); *Prince v. MND Hospitality, Inc.*, No. H-08-2617, 2009 U.S. Dist. LEXIS 61637 (S.D. Tex. July 20, 2009); *Hilton v. Executive Self Storage Assocs., Inc.*, No. H-06-2744, 2009 U.S. Dist. LEXIS 51417 (S.D. Tex. June 18, 2009); *Wang v. Chinese Daily News, Inc.*, 435 F. Supp. 2d 1042 (C.D. Cal. 2006); *Skelton v. Am. Intercontinental Univ. Online*, 382 F. Supp. 2d 1068 (N.D. Ill. 2005). Here, Plaintiffs will easily meet their burden of showing that Defendants knew, or at minimum should have known, that Plaintiffs performed work for which they were not compensated.

There is no question that Defendants had actual knowledge that Plaintiffs were performing work for which they were not paid, and Plaintiffs will be able to prove it at trial. The testimony of Plaintiffs and Defendants' agents will reveal that Defendants' agents explicitly instructed Plaintiffs to work off-the-clock by telling Plaintiffs not to record their true work hours on their timesheets. It will also be clear from both testimony and actual timesheets that Defendants completed or altered Plaintiffs' timesheets when Plaintiffs accurately reported their

hours.  In short, the evidence will reveal that Defendants not only had actual knowledge that Plaintiffs were working without compensation, but were the ones responsible for the off-the-clock work occurring.

By logical inference from the foregoing, Defendants must also necessarily have had constructive knowledge (*i.e.*, should have known) of Plaintiffs' off-the-clock work, since they instructed it.  For example, Defendants knowingly accepted perfectly uniform timesheets that did not match job data, and perfectly uniform break sheets that did not coincide with the time plumbers took breaks.  These documents will be introduced into evidence at trial.

Workers are under no legal obligation to complain about improperly paid wages; the onus of the responsibility sits squarely upon the employer's shoulders.  For example, an employer may not "play ostrich" and simply accept the benefits of additional work.  29 C.F.R. § 785.13 ("… it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is not enough…")

However, where employees do make the effort to bring the illegal pay practice to the employer's attention, such complaints serve only to further the employer's actual knowledge of the situation.  In other words, once Defendants received complaints from employees, they were put on notice of potential FLSA violations and should have inquired further – they should have known of the overtime work.

Additionally, Plaintiffs will put forth evidence regarding the sheer amount of work, the volume of which Defendants knew or should have known could not be completed without Plaintiffs working more hours than recorded on their timesheets.  *See e.g., Thiebes v. Wal-Mart Stores, Inc.*, No. Civ. 98-802-KI, 2004 U.S. Dist. LEXIS 15263 at *14 (D. Or. July 26, 2004)

(instructing jury to examine various factors, such as whether there was too much work performed for the regular hours allotted, in deciding whether employer had knowledge).

## III.   PLAINTIFFS WILL ESTABLISH A MEASURE OF UNREPORTED / UNRECORDED HOURS WORKED AS A MATTER OF JUST AND REASONABLE INFERENCE

This Court has already determined as a matter of law that "Defendants' time records are inaccurate and that the *Anderson v. Mt. Clemens Pottery* just and reasonable inference standard will apply at trial." *McGlone v. Contract Callers, Inc.*, No. 11 Civ. 3004, 2014 U.S. Dist. LEXIS 124612 at *16 - *17 (S.D.N.Y. Aug. 25, 2014). Thus, at trial, Plaintiffs may estimate the amount and extent of work as "a matter of just and reasonable inference," and the burden is on Defendants to "come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (U.S. 1946).

Plaintiffs will be able to do just that by testifying to their typical work day and the work periods that do not appear on their timesheets.[1]

## IV.   PLAINTIFFS WILL PROVE THAT DEFENDANTS WILLFULLY VIOLATED THE FLSA

Plaintiffs will also be able to prove that Defendants acted willfully in violating the FLSA. They will thus extend the statute of limitations on their claims from two years to three years, 29 U.S.C. § 255(a), and activate the liquidated damages provision of the previous version of the

---

[1] Notably, "[a]lthough [plaintiff] is unable to demonstrate the exact amount of hours for which he was uncompensated, this does not defeat his claim.... His testimony was that he worked more than forty hours, and it is the duty of the factfinder to draw all reasonable and just inferences in his favor." *Santelices v. Cable Wiring*, 147 F. Supp. 2d 1313, 1328-29 (S.D. Fla. 2001).

NYLL, covering early parts of the time periods at issue, that required a finding of willfulness. "An employer willfully violates the FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). "Mere negligence is insufficient." *Young v. Cooper Cameron Corp.*, 586 F. 3d 201, 207 (2d Cir. 2009).

In this case, Defendants' agents acted willfully by explicitly instructing Plaintiffs not to record all hours and/or altering or inaccurately completing Plaintiffs' timesheets. This is not just reckless disregard of the law—it is blatant disregard. Although Defendants may attempt to suggest that these were isolated incidents, this is simply not true.

Further, a finding of willfulness is appropriate where an employer has knowledge of FLSA violations through employee complaints, yet continues its illegal conduct. *Ratesi v. Sun State Trees & Property Maintenance, Inc.*, No. 6:05-cv-1825, 2007 U.S. Dist. LEXIS 23870 at *9 - *10 (M.D. Fla. Mar. 30, 2007) (complaint regarding failure to pay overtime compensation sufficient to trigger willfulness); *Davis v. Charoen Pokphand (USA), Inc.*, 302 F. Supp. 2d 1314, 1327 (M.D. Ala. 2004) (employees raised concerns regarding pre-shift donning and doffing, pre-shift tasks, and break period tasks with their union and employer). Here—through formal and informal complaints—Defendants were put on notice of potential violations. That they did little to nothing to make sure the issues in these complaints were resolved demonstrates willfulness. *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142 (2d Cir. 1999) (affirming trial court's reasoning that although the Defendant may not have had actual knowledge of the violative practices, the proof demonstrated he recklessly disregarded the possibility that it was violating the FLSA where the owner failed to look into pay practices being complained about adequately); *Vasquez v. Ranieri Cheese Corp.*, No. 07-cv-464, 2010 U.S. Dist. LEXIS 29431 at *53 - *54 (E.D.N.Y.

Mar. 26, 2010) (finding willfulness where owners testified that they knew of the existence of

minimum wage laws and that an overtime premium was required by law to be paid to the

workers, and hung posters advising employees about the minimum wage and overtime laws, yet

continued to pay plaintiffs at their regular rates of pay for overtime work); *Jin v. Pac. Buffet*

*House, Inc.*, CV-06-579, 2009 U.S. Dist. LEXIS 74901, *13 - *14 (E.D.N.Y. Aug. 24, 2009)

(because "defendant was aware of the requirements of law concerning the payment of minimum

and overtime wages, any failure to pay the required wages must be considered willful.")

## V.      PLAINTIFFS WILL PROVE COVERAGE UNDER THE FLSA

The parties have stipulated that all Plaintiffs were non-exempt employees of CCI; and

that CCI was "engaged in interstate commerce" and had annual sales in excess of $500,000

during the relevant time period.  Thus, enterprise coverage under the FLSA has been established

pursuant to 29 U.S.C. § 203(s)(1)(A), and FLSA overtime provisions apply.  *Liang Huo v. Go*

*Sushi Go 9th Ave.*, 13 Civ. 6573, 2014 U.S. Dist. LEXIS 51621 at *7 (S.D.N.Y. Apr. 10, 2014).

## VI.     PLAINTIFFS WILL PROVE EACH DEFENDANT'S EMPLOYER STATUS

The two individual Defendants dispute that they are Plaintiffs' employers under the

FLSA and NYLL.  However, as is evident from the facts discussed above, Plaintiffs will be able

to prove Defendants' employer status at trial.

As this Court has noted, the definition of an employer under the FLSA is extremely broad

– under the FLSA, an "employer" includes "any person acting directly or indirectly in the

interest of an employer in relation to an employee."  *McGlone v. Contract Callers, Inc.*, No. 11

Civ. 3004, 2014 U.S. Dist. LEXIS 124612 at *20 - *21 (S.D.N.Y. Aug. 25, 2014) (quoting 29

U.S.C. § 203(d)).  Indeed, "[t]he remedial purposes of the FLSA require the courts to define

'employer' more broadly than the term would be interpreted in traditional common law

applications."  *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989).  The Second

Circuit has adopted an "economic reality" test for determine whether an individual qualifies as an "employer" under the FLSA. *Irizarry v. Catsimatidis*, 722 F.3d 99, 111 (2d Cir. 2013), *cert denied*, 132 S. Ct. 1516 (2014). Under this test, courts look to the totality of the circumstances and consider whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. These factors do not "comprise a rigid rule for the identification of an FLSA employer," but rather "provide a nonexclusive and overlapping set of factors to ensure that the economic realities test mandated by the Supreme Court is sufficiently comprehensive and flexible to give proper effect to the broad language of the FLSA." *Irizarry*, 722 F.3d at 105 (citations and internal quotation marks omitted).

In *Irizarry*, the Second Circuit found that there was "no question that [the CEO] had functional control over the operation as a whole." He was active in running the company, as demonstrated by his regular contacts with individual stores, vendors, employees, and customers, and his occasional, if not frequent, involvement in merchandising at the store level. He addressed customer complaints and played a role in the promotion of key employees. Although there was no evidence that he was responsible for the FLSA violations, the fact that he hired managerial employees who, in turn, created and enforced company policy, and that he had overall financial control of the company, including overall employee compensation, was sufficient to render him an employer for purposes of the FLSA. *Id*. at 111-17.

## UNRESOLVED PRETRIAL ISSUES

The parties dispute whether the question of damages should be presented to the jury. The jury should not determine damages per se in this case; however, they should be permitted to

ascertain a proper measure of underreported hours per day or week "as a matter of just and reasonable inference," from which damages can be calculated.

## I.      DAMAGES SHOULD BE CALCULATED BY THE PARTIES POST-TRIAL

As is clear from the discussion below, the actual amount due to Plaintiffs is not a jury question.  Rather, the jury in this case will simply need to decide liability and the number of hours that Plaintiffs worked off-the-clock.  The jury will also decide whether Defendants "willfully" violated the law.  Once the jury provides this information, the parties will have all the data necessary to calculate damages.  The calculations are simple and do not require additional fact-finding.  An overview of the categories of damages sought – (i) unpaid overtime compensation; (ii) liquidated damages; (iii) interest; and (iv) attorneys' fees and costs – is provided below.

### A.      FLSA/NYLL Unpaid Overtime Compensation

The FLSA requires that employers pay their covered nonexempt employees one and one half times their regular rate of pay for all overtime hours worked in any given workweek.  29 U.S.C. § 207(a)(1).  That is also required by the prevailing wage rates at issue here under CCI's contract with the DEP, which set forth required hourly rates for Plaintiffs and required overtime. The employer must first determine what constitutes the employee's "workweek," ascertain the employee's "regular rate of pay for that week," and then pay the statutorily required overtime premium for all hours worked over 40 in that workweek.

The math is simple because this Court already determined that "sunshine" time – provided to certain Plaintiffs to allow them to leave work early if they completed a certain number of jobs – may not be used to offset any pay otherwise owed to Plaintiffs pursuant to state and federal law.  *McGlone v. Contract Callers, Inc.*, No. 11 Civ. 3004, 2014 U.S. Dist. LEXIS

124612 at *19 (S.D.N.Y. Aug. 25, 2014).  Each Plaintiff's weekly overtime is calculated as follows:

> [(REGULAR RATE X 1.5 X OVERTIME HOURS) – OVERTIME COMPENSATION PAID = OVERTIME DAMAGES]

*See* 29 C.F.R. §§ 778.107-778.111.

The jury plays a limited and discrete role with respect to unrecorded overtime hours. After determining that Plaintiffs have met their burden of proof in showing that they worked uncompensated overtime hours, the jury should be charged with determining the average number of weekly unrecorded hours worked by the Plaintiffs.  After this, determining the number of unrecorded overtime hours worked will be a simple function of applying the jury's finding to Defendants' payroll.

This is simple math that the parties can do post-trial.  The jury will likely already have sat through at least ten days of trial.  Their time should not be wasted by being sent to deliberations with a calculator to do the math on a week-by-week basis using these formulas.

For the purpose of damage calculations, the jury need only present their findings on:  (i) liability (whether the Plaintiffs worked uncompensated overtime hours); (ii) average unrecorded hours (how many weekly unrecorded or off-the-clock hours did each testifying Plaintiff work on average); and (iii) willfulness (whether Defendants willfully failed to pay Plaintiffs' overtime compensation).[2]

### B.   FLSA Liquidated Damages

Under the FLSA the court is generally required to award liquidated damages in an amount equal to actual damages.  *Johnson v. D.M. Rothman Company, Inc.*, 861 F. Supp. 2d 326,

---

[2] The question whether damages should be counted in weeks that are more than two years prior to a Plaintiff's consent-filing date will be answered by the jury's determination of whether Defendants willfully violated the law.

335 n.12 (S.D.N.Y. 2012); *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 465 (S.D.N.Y. 2008).  An employer that violates the FLSA's overtime requirements is generally liable to the employee for its "unpaid overtime compensation" as well as "an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).  "If the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission" did not violate the FLSA "the court may, in its sound discretion, award no liquidated damages or award any amount thereof" not to exceed 100% of actual damages.  *See* 29 U.S.C. § 260.

On January 5, 2012, this Court struck Defendants' good faith defense with leave to replead within 20 days (D.E. 28), and Defendants did not replead.  Since Defendants cannot show they acted in good faith, liquidated damages are warranted here as a matter of law, and should not be submitted to the jury.

### C.    Plaintiffs Are Entitled to Reasonable Attorney Fees and Costs

In an action under the FLSA, the court "shall, in addition to any judgment awarded to the plaintiff," allow "a reasonable attorney's fee to be paid by the defendant, and costs of the action."  29 U.S.C. § 216(b).  An award of attorney fees incurred at the trial court level by a prevailing plaintiff is mandatory.  This component of damages, too, is not a question for the jury, and should be decided on the basis of post-trial submissions.

## II.    PLAINTIFFS ARE ENTITLED TO NYLL REMEDIES

The statute of limitations for the NYLL claims is six years.  N.Y. Lab. Law § 663, § 198.  All of the overtime compensation at issue here falls well within the six year period.

### A.    NYLL Liquidated Damages

The damages provisions of the NYLL have been amended twice during the coverage period at issue (*i.e.*, February, 2009 through December, 2011).

The section of the NYLL providing for an award of liquidated damages was first amended in 2009.  Prior to November 24, 2009, plaintiffs were entitled to recover liquidated damages under the NYLL equal to 25% of unpaid wages if plaintiff proved that an employer's NYLL violations were "willful."  *See Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 366 (2d Cir. 2011).  From November 24, 2009 onward, the NYLL has provided for a liquidated damages award "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law."  N.Y. Lab. Law § 198(1-a).  The willfulness standard "does not appreciably differ from the FLSA's willfulness standard."  *Kuebel*, 643 F.3d at 366.  The "good faith" standard has been applied to claims on overtime wages that accrued after November 24, 2009.  *McLean v. Garage Mgmt. Corp.*, No. 10 Civ. 3950, 2012 U.S. Dist. LEXIS 55425 at *25 - *26 (S.D.N.Y. Apr. 19, 2012).  Again, this struck Court struck Defendants' good faith defense on January 5, 2012.

A second change occurred effective April 9, 2011 as part of the Wage Theft Prevention Act:  the NYLL liquidated damages rate increased from 25% to 100%.

FLSA liquidated damages and NYLL liquidated damages serve fundamentally different purposes, and plaintiffs may recover liquidated damages under both statutes.  FLSA liquidated damages are "compensation to the employee occasioned by the delay in receiving wages due caused by the employer's violation of the FLSA."  *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 142 (2d Cir. 1999).  By contrast, liquidated damages under the NYLL "constitute a penalty to deter an employer's willful withholding of wages due."  *Reilly v. Natwest Markets Group Inc.*, 181 F.3d 253, 265 (2d Cir. 1999), *cert. denied* 528 U.S. 1119 (2000).  Plaintiffs may recover both for the same unpaid wages.  *Id.*  By similar reasoning, liquidated damages can be recovered under

both statutes for overlapping periods of time.  *McLean*, *supra,* 2012 U.S. Dist. LEXIS 55425 at *26 - *27.

Plaintiffs are entitled to liquidated damages at minimum from November 24, 2009 onward, since Defendants lacked a good faith basis to believe that their underpayment of wages was in compliance with law.  From November 24, 2009 to April 8, 2011 that rate is 25%; after that, it is 100%.  Plaintiffs are also entitled to liquidated damages from April 1, 2009 through November 23, 2009 at a rate of 25% if the Court determines that CCI acted willfully.

### B.     Interest on Backpay In Addition to Liquidated Damages

The NYLL provides for prejudgment interest on damages for NYLL violations.  N.Y. Lab. Law § 198 (1-a); *Reilly v Natwest Markets Group, Inc., supra,* 181 F. 3d at 265.

Under federal law, i.e. the FLSA, plaintiffs cannot recover both liquidated damages and interest.  However, under *state* law, *i.e.* the NYLL, plaintiffs can and should recover state statutory (C.P.L.R. § 5001) interest on backpay amounts awarded in addition to liquidated damages.  *Kopec v. GMG Construction*, 09-CV-2187, 2010 U.S. Dist. LEXIS 104844 at *12 (E.D.N.Y. Sept. 10, 2010) (finding that although plaintiffs may not recover prejudgment interest on FLSA liquidated damages, they "may recover NYLL prejudgment interest on unpaid wages that were awarded under both the FLSA and NYLL, even where FLSA liquidated damages have also been awarded based on that amount"), *report and recommendation adopted*, 2010 U.S. Dist. LEXIS 104842, *rev'd on other grounds*, 2011 U.S. Dist. LEXIS 72441 (E.D.N.Y. July 6, 2011); *Dong v. CCW Fashion Inc.*, 06 Civ. 4973 / 07 Civ. 9741, 2009 U.S. Dist. LEXIS 33194 at *14 (S.D.N.Y. Feb. 19, 2009) ("Prejudgment interest is recoverable on the actual damages. On the claims for liquidated damages, prejudgment interest is recoverable under New York Labor Law, but not under the FLSA."); *Heng Chan v. Sung Yue Tung Corp.*, 03 Civ. 6048, 2007 U.S. Dist. LEXIS 33883 at * 25 (S.D.N.Y. May 7, 2007) ("Prejudgment interest may be awarded on state

claims pursuant to N.Y. C.P.L.R. § 5001 even where liability is also found under the FLSA. Defendants' objections to prejudgment interest on these claims are without merit.").

Since prejudgment interest can only be awarded on the basis of what is solely a state claim, it is appropriate to use the state interest rate. *McLean*, *supra*, 2012 U.S. Dist. LEXIS 55425 at *28 - *29 (citing *Thomas v. iStar Financial, Inc.,* 652 F.3d 141, 150, n.7 (2d Cir. 2011), *cert. denied* 132 S.Ct. 856 (2011)). The appropriate interest rate to use is 9% per annum, simple, computed from the midpoint of each Plaintiff's employment to the date of entry of judgment. C.P.L.R. §§ 5001(b) and 5004.

Under Section 5001, interest accrues at 9% per annum computed on a simple interest basis from "the earliest ascertainable date the cause of action existed." C.P.L.R §§ 5001, 5004; *see also Koylum, Inc. v. Peksen Realty Corp*., 357 F. Supp. 2d 593, 596 (E.D.N.Y. 2005), *aff'd in part and vacated in part*, 160 Fed. Appx. 91 (discussing C.P.L.R. §§ 5001, 5004); *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 90 (2d Cir. 1998) (discussing rationale for computing sum on a simple interest basis). Where damages were incurred at various times – here, at weekly intervals – the Court has discretion to choose a reasonable accrual date. *Koylum*, 357 F. Supp. 2d at 597. The median date "between the two poles represented by the earliest breach of contract and the date this action was filed" is one that is commonly used. *See, e.g., id*. (quoting *Panix Prod., Ltd v. Lewis*, No. 01 Civ. 2709, 2003 U.S. Dist. LEXIS 11952 at *8 - *9 (S.D.N.Y. July 15, 2003)); *see also James v. Finest Guard Servs*., 09 CV 122, 2010 U.S. Dist. LEXIS 73223 at *37 (E.D.N.Y. June 24, 2010) (stating in an overtime case, "[T]his Court will compute interest from the month halfway between when each plaintiff began and ceased working for defendant.").

### C.    Attorney Fees and Litigation Costs

A prevailing plaintiff is also entitled to attorney fees and costs under the NYLL. N.Y. Lab. Law § 198(1-a). Plaintiffs will not seek duplicative damages for this element; the NYLL

simply serves as a separate legal basis for the awards.  As discussed above, none of these

damages are a question for the jury.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court order that damages

be calculated post-trial.

Dated:  New York, New York
        October 31, 2014

Respectfully submitted,

Rishi Bhandari, Esq.
MANDEL BHANDARI LLP
11 Broadway, Suite 615
New York, NY 10004
(212) 269-5600
(646) 964-6667 (fax)
rb@mandelbhandari.com

Penn Dodson, Esq.
Christopher T. Anderson, Esq.
ANDERSONDODSON, P.C.
11 Broadway, Suite 615
New York, NY  10004
212.961.7639
646.998.8051 (fax)
penn@sunnysidelaw.com

*Attorneys for Plaintiffs*

17